# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

LISA A. SCHEFFERT,

        Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,

        Defendant.

No.  C18-1031-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Mark A. Roberts, United States Magistrate Judge.  *See* Doc. No. 17.  Judge Roberts recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Lisa A. Scheffert's[1] application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 et seq. Scheffert has filed timely objections (Doc. No. 18) and the Commissioner has filed a response (Doc. No 21).

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive  . . .").  "Substantial

---

[1] As noted in the complaint, the claimant is referred to as Lisa Stotts throughout the administrative record.  *See* Doc. No. 3 at 1, n.1.  Because she filed her complaint under the name Lisa Scheffert, I will refer to her by that name.

evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817,

822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.   *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.   THE R&R

Scheffert alleges disability beginning on July 30, 2015, due to neurocardiogenic syncope.[2] Doc. No. 17 at 1-2 (citing AR 148, 180). Her application was denied initially and on reconsideration. *Id.* (citing AR 81-84, 86-89). An administrative hearing was held on September 27, 2017. *Id.* (citing AR 29-58). Scheffert and a vocational expert (VE) testified.

On November 28, 2017, the ALJ issued a written opinion finding Scheffert not disabled since July 30, 2015. *Id.* (citing AR 11-22). The ALJ concluded Scheffert had severe impairments of neurocardiogenic syncope, right knee degenerative joint disease, obesity, gastritis, fructose malabsorption and generalized anxiety disorder. *Id.* (citing AR 14). The ALJ found none of her impairments (singly or in combination) met or medically equaled the severity of a listed impairment. *Id.* (citing AR 14). The ALJ determined Scheffert had the following residual functional capacity (RFC) to perform light work with the following restrictions:

> [S]he can push and pull as much as she can lift and carry; never climb ladders, ropes, or scaffolds; occasional exposure to extreme heat, extreme cold, and humidity; must avoid hazards such as unprotected heights and dangerous machinery; no operation of a motor vehicle to carry out job duties; limited to indoor work with ready access to a restroom; simple,

---

[2] As Judge Roberts noted, neurocardiogenic syncope "occurs when you faint because your body overreacts to certain triggers, such as the sight of blood or extreme emotional distress. It may also be called [vasovagal syncope.]" Doc. No. 17 at 2, n.4 (quoting Mayo Clinic, Vasovagal syncope, https://www.mayoclinic.org/diseases-conditions/vasovagal-syncope/symptoms-causes/syc-20350527).

routine tasks; occasional contact with supervisors, coworkers, and the public.

*Id.* at 6 (citing AR 16). The ALJ further found Scheffert was unable to perform her past relevant work, but that other jobs exist in the national economy that she can perform including marker, photocopy operator and page. *Id.* (citing AR 20-21). The ALJ therefore concluded Scheffert was not disabled. This became the final decision of the Commissioner when the Appeals Council denied Scheffert's request for review on May 29, 2018. *Id.* at 2 (citing AR 1-5).

Scheffert argues the ALJ erred by failing to (a) fully and fairly develop the record related to her physical limitations and did not provide good reasons for discounting her credibility and (b) provide sufficient reasons for the weight assigned to the opinion of Laura Hoffman, LMHC. She also argues remand is necessary because the ALJ was not constitutionally appointed.

With regard to development of the record and the ALJ's credibility determination, Judge Roberts summarized the relevant standards and noted that Scheffert's arguments fell into the following categories: sufficiency of the evidence, how the ALJ weighed and discussed work-related restrictions, trigger factors and jobs in the national economy and the *Polaski* factors. Regarding the sufficiency of the evidence, Judge Roberts first addressed Scheffert's argument that her treatment for syncopal episodes dates back prior to May 2015 and is contrary to the ALJ's observation that her May 2015 visit to the University of Wisconsin Health represented the first time she had sought treatment for that impairment. Doc. No. 17 at 10 (citing AR 18). Judge Roberts agreed with Scheffert that the record shows she had sought treatment prior to May 2015. However, he found this was harmless error because the ALJ did not rely on any treatment history prior to May 2015 to support his decision and Scheffert does not allege disability beginning until July 30, 2015. *Id.*

Next, Judge Roberts addressed Scheffert's argument that substantial evidence in the record does not support the ALJ's finding that Scheffert had infrequent trips to the

doctor and significant gaps in her treatment history. *Id.* Judge Roberts noted that between her alleged onset date of July 30, 2015, and the date of the hearing - September 7, 2017 – Scheffert sought treatment a total of 11 times. *Id.* at 11. He also noted that the frequency of these visits was determined by Scheffert's cardiac team. With regard to the substance of those visits, Judge Roberts pointed out the ALJ found "some discrepancies in information reported by the claimant to various treating sources when addressing symptom levels, effectiveness of treatment, and capabilities of functioning." AR 19. Scheffert argues the ALJ did not explain what those discrepancies were or provide any citations to the record. Doc. No. 17 at 11. Judge Roberts noted that this statement by the ALJ was preceded by a reference to an earlier part of his decision in which the ALJ did cite to specific parts of the administrative record. *Id.* at 12. He concluded this was an "arguable deficiency in opinion-writing technique" that "had no bearing on the outcome of [the] case and does not require remand." *Id.* (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) (internal quotation omitted)).

Judge Roberts then reviewed Scheffert's treatment notes for her neurocardiogenic syncope and found they supported the ALJ's decision. *Id.* at 12-14. These notes indicated Scheffert's episodes of syncope decreased after she underwent a tilt table test in May 2015 and was prescribed medication. *Id.* Her cardiologist prescribed an additional medication in December 2015 after Scheffert continued experiencing symptoms. *Id.* at 12-13 (citing AR 613). She reported that this medication decreased the number of episodes. *Id.* at 13 (citing AR 661). Judge Roberts observed that Scheffert made inconsistent statements to different providers regarding triggers to her syncopal episodes. *Id.* (citing AR 610, 661). Scheffert attended regular medication management appointments over the next 11 months during which adjustments and changes were made to her medications. In January 2017, Scheffert told her cardiologist her symptoms were better, denied any episodes and identified triggers to her symptoms that she had been avoiding. In April 2017, she reported an increase in her vasovagal episodes to her therapist. *Id.* at 14 (citing AR 859). In July 2017, she reported occasional symptoms,

including a racing heart about once per month, but that she had not taken extra medication as instructed for this symptom. *Id.* The provider managing her medication concluded her neurocardiogenic syncope was "adequately controlled on current medical therapy." *Id.* (citing AR 592). Judge Roberts concluded the record supported the ALJ's finding that Scheffert reported a varying degree of symptoms during the relevant time period and that medication was effective in controlling her symptoms. *Id.*

Judge Roberts then addressed some of the discrepancies Scheffert takes issue with, such as her alleged difficulty identifying triggers for her syncopal episodes and the frequency of her dizzy spells. In reviewing the records, Judge Roberts noted that Scheffert claimed there were no known triggers as to what caused her episodes such that she had to leave work or stay home. *Id.* at 14-15 (citing AR 193). However, she testified that she now has a "good handle" on when an episode is going to start such that she feels comfortable driving her child to school every day. *Id.* at 15 (citing AR 44). Second, while Scheffert claimed that computer and TV screens triggered her episodes, she reported she watches TV on a daily basis and testified she uses her computer for games. *Id.* (citing AR 35, 49, 194). She also testified that she gets dizzy spells two to four times a day that can last up to 20 minutes if she can lie down and let them pass. However, she also testified that she needs to sit to recover from dizzy spells. *Id.* (citing AR 35, 42).

Judge Roberts found the medical evidence documented occasional dizziness symptoms and Scheffert apparently did not seek treatment for the alleged increase in dizzy spells because no new evidence was added to the record at the beginning of the hearing. *Id.* The ALJ had explained that while Scheffert continued to complain of lightheadedness, there was no actual syncope documented and treatment improved her symptoms. Judge Roberts found the ALJ's conclusion that Scheffert's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" was supported by substantial evidence on the record as a whole. *Id.* at 15-16 (citing AR 17).

Next, Judge Roberts addressed Scheffert's argument that her earnings history was inappropriately used to discredit her subjective allegations. The ALJ stated her earnings history raised "some questions as to whether the current unemployment is truly the result of medical problems, as she reportedly experienced presyncopal episodes for several years while working." AR 19. The ALJ also remarked that Scheffert's ability to work full time while allegedly experiencing so many near-syncopal episodes per week called into question her current reasons for applying for disability when her episodes are better controlled. Judge Roberts concluded the ALJ's reasons were supported by substantial evidence and the ALJ appropriately used Scheffert's prior work as evidence against her credibility. *See* Doc. No. 17 at 16 (citing *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005)).

Judge Roberts next addressed Scheffert's arguments as to how the ALJ weighed and discussed work-related restrictions. Scheffert argued the ALJ inappropriately found that the lack of work restrictions in her medical records was a good reason to conclude she did not have any work restrictions. *Id.* at 17 (citing Doc. No. 13 at 6). She also argued that reliance on the state agency medical consultants' opinions was misplaced because she continued receiving treatment after they issued their opinions. She claims that her cardiologist's January 18, 2017, note that she should "avoid triggering factors" should be considered a "work restriction-like" opinion and contends the ALJ did not consider this treatment note.

Judge Roberts explained that there was no indication in the treatment notes that Scheffert's cardiologist understood what triggered her episodes in January 2017 – or even if those triggers could be related to work. Scheffert was inconsistent in identifying and reporting triggers and no triggers are mentioned in the January 2017 treatment note with her cardiologist. Thus, Judge Roberts concluded that the cardiologist had not provided any work-related restrictions. He further observed that the nurse practitioner Scheffert saw for medication management also did not mention any limitations and encouraged Scheffert to engage in physical activity. *Id.* at 18 (citing AR 592, 600, 603, 606, 609,

613).  The ALJ accounted for Scheffert's credible triggers (heat and humidity) by including a limitation in the RFC of indoor work with only occasional exposure to extreme heat, extreme cold and humidity.  *Id.* (citing AR 16).

Judge Roberts then considered whether the ALJ was required to attempt to obtain treating provider opinions as to work-related limitations before relying on the opinions of the state agency consultants under *Bowman v. Barnhart*, 310 F.3d 1080 (8th Cir. 2002).  He agreed with the Commissioner that *Bowman* requires re-contacting a claimant's treating physician for additional evidence and clarification only when the physician's notes are cursory or merely list the claimant's impairments and medications.  *Id.* (citing Doc. No. 14 at 13).  He explained that the relevant treatment notes are very detailed with each examination covering multiple pages.  *Id.*  He concluded the record contained sufficient medical evidence to support the ALJ's decision.  After discussing this evidence, including the opinions of the state agency consultants and treatment notes, in addition to other evidence, Judge Roberts concluded the ALJ did not make inappropriate medical inferences.  *See id.* at 19-22.  He found the record was adequately developed concerning Scheffert's work-related limitations and no further opinion evidence was required.

The next category Judge Roberts addressed involved arguments related to Scheffert's trigger factors and jobs in the national economy.  Scheffert argues that one of the jobs identified by the VE – photocopy operator – was inappropriate because it would trigger her neurocardiogenic presyncope symptoms.  *Id.*  Judge Roberts concluded that even if that job was inappropriate, she did not challenge the other two jobs the VE identified that were available in significant numbers in the national economy.  *Id.* at 23.

Finally, Judge Roberts addressed Scheffert's arguments related to the *Polaski* factors.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  He concluded the ALJ properly acknowledged and considered the duration, frequency and intensity of Scheffert's episodes as well as the dosage and effectiveness of medication when he noted the highs and lows of Scheffert's presyncope symptoms, improvement with treatment and

the fact that no actual syncope had been documented. *Id.* at 25. He found the ALJ also considered precipitating and aggravating factors by limiting Scheffert's RFC to no exposure to extreme heat or humidity, light exertional work, no operation of a motor vehicle and "simple, routine tasks with only occasional contact with supervisors, coworkers and the public." *Id.* He found no error with respect to the ALJ's analysis of the *Polaski* factors. Judge Roberts concluded the ALJ's RFC and credibility determinations were supported by substantial evidence. *See id.* (summarizing record evidence).

Turning to Scheffert's argument regarding the weight assigned to the opinion of her counselor, Laura Hoffman, LMHC, Judge Roberts noted that Hoffman completed a Mental Medical Source Statement on August 16, 2017. Hoffman stated she began treating Scheffert in fall 2015 and continued treating her through the date of her statement. She indicated Scheffert had mild to moderate mental impairment due to stress, anxiety, feelings of embarrassment and a realistic fear of fainting. *Id.* (citing AR 833). She stated Scheffert's prognosis was "fair due to moderate to severe limitations in physical activity and heat intolerance to not trigger vasovagal episode." *Id.* (quoting AR 833).

Hoffman stated Scheffert was "unable to work" and identified several signs and symptoms. *Id.* at 27 (citing AR 835-36). She rated most of Scheffert's work-related mental abilities and aptitudes as either "unlimited," "good" or "limited but satisfactory." *Id.* The only ones she identified as seriously impaired were the ability to maintain regular attendance and be punctual within customary, usually strict tolerances and to deal with normal work stress. *Id.* (citing AR 837-38). She opined that Scheffert would be unable to meet competitive standards in the areas of: making work-related decisions, completing a normal workday and workweek without interruptions from psychologically-based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods and accepting instructions and responding appropriately to criticism from supervisors. *Id.* (citing AR 838). She found marked restrictions in daily living; understanding, remembering or applying information; and in concentrating, persisting or

10

maintaining pace. *Id.* at 28 (citing AR 839). She opined that Scheffert would miss more than four days of work a month and would be off-task 25 percent of each work day. *Id.* (citing AR 838). The ALJ gave her opinion little weight because he found it was "not consistent with Ms. Hoffman's treatment notes and the medical evidence of record." *Id.* (quoting AR 20).

Judge Roberts began his analysis by noting that Hoffman is not considered an acceptable medical source, but an "other source." Nonetheless, her opinion may be evaluated under the same factors relevant to treating sources listed under 20 C.F.R. § 404.1527. *Id.* Judge Roberts examined the record related to these factors to determine if the weight assigned to Hoffman's opinion was supported by the evidence. Under the "length and frequency of treatment relationship" factor, he noted Hoffman has treated Scheffert since 2015, reporting that she sees her every three to four weeks. *Id.* at 29-30. However, he noted the record contains only five treatment notes and one discharge note. *Id.* at 30 (citing AR 843-61). Indeed, the December 1, 2016, discharge note states that Scheffert had not been seen since May 11, 2016.[3] Other records, however, indicate Scheffert saw Hoffman beginning in February 17, 2016, with additional appointments in January, April, July and August 2017. Judge Roberts concluded this factor weighed in favor of giving Hoffman's opinion more than little weight.

With regard to supportability, Judge Roberts noted that many of Hoffman's opinions were unsupported by her treatment notes. *See id.* at 31-34. He concluded this factor weighed against giving Hoffman's opinion more than little weight. With regard to consistency, Judge Roberts noted the ALJ specifically referenced Scheffert's minimal mental health treatment, gaps in her treatment history and discrepancies in the information Scheffert reported to her treatment providers. *Id.* at 34 (citing AR 19).

---

[3] It appears these notes may have been related to another provider. *Compare* AR 842-56 (identifying records from Hillcrest Mental Health Center) with AR 857-60 (identifying Hoffman's records from Crossroads).

Judge Roberts observed there were inconsistencies concerning the frequency that Hoffman saw Scheffert and statements in the treatment records (both Hoffman's and others') that were inconsistent with the limitations Hoffman had identified. *Id.* at 35 (citing AR 630, 637, 639, 648). Judge Roberts also examined inconsistencies between Hoffman's opinion and Scheffert's testimony and the treatment she was receiving from other providers. *Id.* at 36-37. He concluded the consistency factor did not weigh in favor of giving Hoffman's opinion more than little weight. *Id.* at 38. With regard to specialization, he noted that Hoffman is a licensed mental health counselor, but the record contains no information about her training or level of education. He concluded this factor weighed only slightly in favor of giving her opinion more than little weight. *Id.*

Judge Roberts concluded the weight assigned to Hoffman's opinion is supported by substantial evidence in the record as a whole. *Id.* While Scheffert is concerned about fainting in public, she testified she knows when her episodes are coming, her cardiology team has determined her symptoms are adequately controlled and Scheffert did not begin taking medication for her mental health until January 13, 2016, and did not seek counseling until February 17, 2016. She continues to receive conservative treatment and sees her counselor intermittently. Judge Roberts recommends the ALJ's decision be affirmed on this point.

Judge Roberts then addressed Scheffert's third argument, based on *Lucia v. Sec. and Exch. Comm'n*, 138 S. Ct. 2049 (2018), related to whether the ALJ was properly appointed under the Appointments Clause of the Constitution. He noted that this court has ruled in favor of the Commissioner on similar claims on several occasions. *Id.* at 41 (citing cases). He rejected Scheffert's argument that it would have been futile to raise the issue during the administrative process, noting that she could have raised it and preserved it for appeal. Judge Roberts recommends that I affirm the ALJ's decision.

## IV.    DISCUSSION

Scheffert makes the following objections to the R&R:

- The ALJ failed to fully and fairly develop the record as to Scheffert's physical limitations and did not provide good reasons for discounting her credibility

- The ALJ did not provide sufficient reasons for the weight assigned to the other medical source's treating opinions

- The ALJ was an inferior officer not appointed in a constitutional manner, which requires the ALJ's decision be vacated and Scheffert's claim remanded to be decided by a new ALJ who was properly appointed

Doc. No. 18.


### A.    Development of the Record and Credibility Determination

Scheffert disagrees that inconsistencies in the record were a good reason to discredit her subjective allegations. She admits that her medication improved her symptoms but notes that she still experienced occasional symptoms. *Id.* at 2. She contends that any inconsistencies between her function report and hearing testimony regarding her triggers of watching TV and using computers are explained by the time it took for her and her providers to identify her triggers. She notes that a substantial amount of time passed between the date she completed the function report (in which she stated she watched TV on a daily basis) and the date of the hearing (in which she stated TV and computer lights are a trigger). *Id.* (citing AR 194, 200 (function report is dated August 11, 2015) and AR 27 (hearing was held on September 7, 2017)). She contends the ALJ did not properly account for her triggering factors in the RFC determination and did not provide good reasons for rejecting her reports of triggering factors. *Id.* at 4. She argues the photocopy machine operator job did not account for her triggers and that an appropriate consideration of her triggers would change the hypothetical question to the

VE and therefore, all of the possible jobs she could perform, not just the photocopy machine operator job. *Id.* She contends that any inconsistencies relied upon by the ALJ are not substantially inconsistent with her claim.

Scheffert also argues her previous substantial gainful activity was not a good reason to discredit her subjective allegations. The ALJ observed that Scheffert had made substantial gainful activity level earnings from 2000 through 2011. AR 19. He stated "[h]er work history raises some questions as to whether the current unemployment is truly the result of medical problems, as she reportedly experienced the presyncopal episodes for several years while working." *Id.* Scheffert explains that she reported her symptoms began (or returned or worsened) in October 2014. *Id.* at 3 (citing AR 37-38, 300-01). She states: "The consultation note indicating symptoms began 3 to 4 years ago and were occurring currently 4-5 times per week is not inconsistent with Ms. Scheffert's reports, and not inconsistent with her engaging in substantial gainful activity 3 to 4 years before May of 2015." *Id.* (citing AR 338).[4] She contends that if the ALJ wished to explore the frequency of symptoms and their impact on her ability to perform substantial gainful activity before the relevant period, the ALJ should have done so "before leaping to unsupported conclusions." *Id.*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* In reviewing the ALJ's credibility determination I must consider the evidence that both supports and detracts from the ALJ's decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). It is not

---

[4] The consultation note is dated May 26, 2015. AR 338.

appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion. *Perks*, 687 F.3d at 1091. An ALJ is not required to discuss every piece of evidence that was submitted and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

> With regard to inconsistencies in Scheffert's allegations, the ALJ stated:
>
> As noted above, there have been some discrepancies in information reported by the claimant to various treating sources when addressing symptom levels, effectiveness of treatment, and capabilities in functioning. While the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely supportable by the record. Therefore, the claimant's consistency with the evidence is eroded.

AR 19. In earlier parts of his opinion, the ALJ reasoned that some daily activities (such as driving) were inconsistent with allegations of disabling symptoms. He also found Scheffert's medical treatment was inconsistent with her claims of disabling symptoms because it was infrequent and had significant gaps. *Id.* He added it was difficult to attribute severe limitations to Scheffert's medical condition in light of the relatively weak medical evidence. *Id.* at 18. He noted Scheffert denied any syncopal episodes and indicated milder symptoms with treatment. *Id.* He found the exertional limitations she claimed failed to correlate with her condition and objectively no hypotension was documented. *Id.* He observed that no treating doctors recommended any physical restrictions and the opinion evidence did not support her allegations of disabling symptoms. *Id.* at 20. He also pointed out that Scheffert had been engaged in substantial gainful activity while experiencing presyncopal episodes. *Id.* at 19.

At the hearing, the ALJ noted that the medical reports indicated Scheffert had not had any episodes for the past month. He's asked her how often she has them now and to explain why that might differ from the medical records. AR 42. Scheffert testified she has episodes on a daily basis and that they occur two to four times a day. *Id.* She

indicated that grocery shopping, mowing the lawn and going to public places can trigger her symptoms as well as lights from computers TVs, stores and cars. *Id.* at 36, 43.

With regard to her triggers, the record contains the following reports of triggers (or lack thereof) to her medical providers:

- December 4, 2014 – Scheffert reported there was no pattern to her episodes and that they occurred with varying activities at varying times of day and did not correlate with meals. AR 289.

- January 13, 2016 – Scheffert reported to a nurse practitioner that heat, alcohol and moving from sitting to standing trigger her symptoms. AR 661.

- January 26, 2016 – Scheffert reported to a different nurse practitioner that her symptoms occur "without pattern related to food or activity." AR 610.

- January 18, 2017 – Scheffert's cardiologist noted: "Patient is here today reporting that her symptoms are less frequent and shorter in duration since starting her on fludrocortisone. Denies any major syncope or presyncopal episodes. She was able the last few months to recognize the triggering factors for her symptoms and tries to avoid them." AR 592. He recommended she "[a]void triggering factors" at that time. *Id.* at 597.

Scheffert's triggers are only supported by her subjective allegations. While I appreciate that it took time to identify her triggers, the ALJ did not rely heavily on the inconsistency between her TV-watching/using a computer and later identifying those activities as a trigger to discredit her subjective allegations. As discussed above, the ALJ provided multiple reasons why he found her subjective allegations were not fully credible.

Scheffert argues one of those reasons – engaging in substantial gainful activity while experiencing symptoms - is unsupported by the record. *See* AR 19. She contends the record shows her episodes started in October 2014. *See* Doc. No. 18 at 3 (citing AR 37-38, 300-01). While that is consistent with Scheffert's testimony at the hearing, treatment notes suggest that she first experienced symptoms much earlier. For instance, a treatment note from November 2014 indicates she had similar symptoms in the past and was seen in cardiology and given a Holter monitor. *See* AR 300-01. A treatment note

from December 2014, indicates she was evaluated by cardiology in the fall of 2013. *Id.* at 282. Most notably, a treatment note dated May 26, 2015, states that Scheffert reported experiencing near syncope events three to four years ago with four to five events per week and that she had undergone previous work up for symptoms in 2012 and 2013. *See* AR 339. *See also* AR 165 (showing substantial gainful earnings, including 2008 through 2012); AR 365 (showing Scheffert had electrocardiographic recordings performed in 2014, 2013, 2010 and 2009).[5]

The records also suggest her symptoms have significantly decreased since then, despite her testimony to the contrary. *See* AR 661 (treatment note dated January 13, 2016, noting that episodes had decreased to one to three times per week). The most recent treatment note from her cardiologist is dated July 18, 2017. AR 589. It states she has "occasional symptoms, a little worse with the high heat and humidity, but has not been presyncopal." *Id.* He concluded her neurocardiogenic presyncope was "[a]dequately controlled on current medical therapy," made no changes to her medications and agreed, upon Scheffert's request, to see her again in six months or as needed. *Id.* at 592. As noted above, I must consider the evidence that both supports and detracts from the ALJ's decision. *Perks*, 687 F.3d at 1091 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). It is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion. *Perks*, 687 F.3d at 1091.

I find that ALJ provided good reasons for discrediting Scheffert's subjective allegations – including any allegations related to her purported triggers – and that he was not required to develop this issue further. These reasons are supported by substantial evidence in the record as a whole. Because I find the ALJ provided good reasons for discrediting Scheffert's subjective allegations, I also find that the ALJ did not err in failing to include a limitation related to Scheffert's alleged triggers in the RFC or hypothetical question. As explained by Judge Roberts, the VE testified that none of the

---

[5] There are no treatment notes in the record prior to 2014.

jobs identified would involve computer work lasting for more than 30 minutes, which is the hypothetical limit posed to the VE by Scheffert's attorney. *See* AR 56. I also agree with Judge Roberts that even if, for some reason, the photocopy machine operator job was inappropriate, the other two jobs identified by the VE, and accepted by the ALJ, constitute other work that is available in significant numbers in the national economy. In sum, I find no error with regard to the development of the record or the ALJ's credibility determination. This objection is overruled.

### B.     *Weight Assigned to Hoffman's Opinion*

Scheffert continues to rely on her principal brief as to this issue but adds that Judge Roberts' analysis of this issue attributes certain findings to the ALJ that the ALJ never made. She contends she would not have challenged the weight assigned to Hoffman's opinion if the ALJ's analysis had been as thorough as Judge Roberts'. Doc. No. 18 at 5. The Commissioner argues that Judge Roberts was merely pointing out evidence in the record that supported the ALJ's finding that Hoffman's opinion was inconsistent with the record as a whole. Doc. No. 21 at 6.

The ALJ gave Hoffman's opinion little weight, stating it was not consistent with Hoffman's treatment notes and the medical evidence of record. AR 20. Judge Roberts summarized Hoffman's opinion and noted she was considered an "other medical source," meaning her opinion was not entitled to controlling weight but could be evaluated under the same factors applicable to opinions from acceptable medical sources. *See* Doc. No. 17 at 28 (citing 20 C.F.R. § 404.1527). He noted that an ALJ has more discretion in evaluating other medical source evidence and is permitted to consider any inconsistencies found within the record. *Id.* at 29 (citing *Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *6 (N.D. Iowa Apr. 21, 2016)). He then considered whether the opinion was consistent with other evidence in the record utilizing the factors under 20 C.F.R. § 404.1527.

I agree with the Commissioner that Judge Roberts did not engage in post-hoc rationalization of the ALJ's decision to give Hoffman's opinion little weight. *See id.* at 7. Judge Roberts considered the ALJ's reasons for the weight he assigned to Hoffman's opinion and considered whether those reasons were supported by substantial evidence in the record as a whole based on the factors under 20 C.F.R. § 404.1527. While Judge Roberts found that some factors (length and frequency of treatment relationship and specialization) weighed in favor of giving Hoffman's opinion greater weight than the ALJ assigned, this was simply another way of considering evidence that detracts from the ALJ's decision. When reviewing the opinion under the factors of supportability and consistency (factors cited by the ALJ), he determined that the record supported the ALJ's decision to give her opinion little weight.

Having conducted my own de novo review of the record, I agree that the ALJ's decision to give Hoffman's opinion little weight is supported by substantial evidence in the record as a whole. Hoffman identified numerous, severe limitations related to Scheffert's mental health that are inconsistent with and unsupported by the record. The record shows Scheffert received conservative treatment for her mental health symptoms and the severity of impairments expressed in Hoffman's opinion is not reflected in Hoffman's treatment notes. *See* AR 832-60. Indeed, a mental status exam performed by another provider on February 17, 2016, identifies multiple categories such as attitude, behavior, concentration, mood, thought content, thought process memory and judgment as "within normal limits" and "good." Otherwise, it indicated she had difficulty falling asleep and her self-esteem and self-concept were "fair." *See* AR 844-45. This differs drastically from the disabling limitations identified by Hoffman in her opinion dated August 16, 2017. AR 832-40. The treatment and progress notes[6] between the February

---

[6] The record indicates Scheffert was last seen for therapy in May 2016 by a therapist who no longer worked at the agency and that Scheffert was being discharged as of December 2016

2016 mental status exam and Hoffman's August 2017 opinion do not indicate a significant deterioration in Scheffert's mental health that would explain this inconsistency. *See* AR 629-62; 843-60. Substantial evidence in the record supports the ALJ's decision to give Hoffman's opinion little weight. This objection is overruled.

### C.   *Appointments Clause Challenge*

Scheffert relies on the same arguments made in her principal and reply briefs regarding whether the ALJ was appointed in violation of the Appointments Clause of the United States Constitution. She notes that the Eighth Circuit Court of Appeals recently consolidated a second set of cases involving Appointments Clause challenges to ALJs under the Social Security Administration and that these cases have been screened for oral argument. Doc. No. 18 at 5. She notes these cases generally have a different posture than earlier consolidated cases due to the emergency messages that were issued instructing ALJs and administrative appeals judges on how to address Appointments Clause challenges. *See* EM-18003 and EM-18003 REV. She also notes that one district court in the Eighth Circuit has followed a recent decision by the Third Circuit Court of Appeals that found agency issue exhaustion is not required for constitutional claims for social security disability claimants seeking judicial review in federal district court. *See S.P.J. Wang v. Saul*, 0:18-cv-03144-DTS (D. Minn. Feb. 28, 2020) (citing *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020)). She notes another district court in the Eighth Circuit has stayed a case pending the Eighth Circuit's decision on this issue. *See Harwell v. Saul*, No. 4:18-cv-296-RGE-CFB (S.D. Iowa Mar. 2, 2020).

This issue began with *Lucia*, in which the Supreme Court held that administrative law judges of the Securities and Exchange Commission are "Officers of the United

---

because she had not scheduled a follow up appointment with another therapy provider. AR 847. There are only four progress notes from Hoffman in the record dated January 11, 2017, through August 24, 2017. AR 857-60.

States" within the meaning of the Appointments Clause, meaning that the President, a court of law or department head must appoint them. *Lucia*, 138 S. Ct. at 2049. Scheffert argues that this holding, when combined with the lack of an Appeals Council exhaustion requirement under *Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."), permits a claimant to challenge the appointment of a Social Security ALJ for the first time during judicial review. Doc. No. 13 at 10, 12-14. Scheffert argues that even if there was an exhaustion requirement, the constitutional claims exception and the futility exception apply. *Id.* at 14-18. In the alternative, Scheffert asks for discretionary review of the Appointments Clause challenge under *Freytag v. Commissioner*, 501 U.S. 868 (1991). *Id.* at 18-19.

The Commissioner argues that the Eighth Circuit has already rejected the line of reasoning used in *Cirko*. *See* Doc. No. 21 at 8. The Commissioner contends the appropriate inquiry is not whether a particular adjudicator could have granted relief, but whether the agency itself could have granted relief. *Id.* at 9. He contends the Commissioner could have granted relief as demonstrated by the fact that the Commissioner has appointed ALJs. *Id.* He argues Judge Roberts properly found that Scheffert's failure to raise her Appointments Clause challenge at any point in the administrative process forfeited her claim. *Id.*

*Cirko* is not binding on this court. Multiple district courts outside the Third Circuit have declined to follow its holding. *See Gagliardi v. Soc. Sec. Admin.*, Case No. 18-cv-62106-BLOOM/Valle, 2020 WL 966595, at *4-6 (S.D. Fla. Feb. 28, 2020); *Ramazetti v. Comm'r of Soc. Sec.*, No. 8:19-cv-260-T-MAP, 2020 WL 428950 (M.D. Fla. Jan. 28, 2020); *Streich v. Berryhill*, No. 3:18-cv-01977 (RAR), 2020 WL 563373, at *2-3 (D. Conn. Feb. 5, 2020); *Ricks v. Comm'r of Soc. Sec.*, No. 18-1097-RLB, 2020 WL 488285, at *3-4 (M.D. La. Jan. 30, 2020). Others have adopted it or reached similar conclusions. *See Suarez v. Saul*, No. 3:19-cv-00173 (JAM), 2020 WL 913809 (D. Conn. Feb. 26, 2020); *Tommy A.D. v. Saul*, Case No. 18-CV-536-FHM, 2020 WL 905213

(N.D. Okla. Feb. 25, 2020); *McCray v. Soc. Sec. Admin.*, No. CIV 19-0090 JB/GBW, 2020 WL 429232 (D.N.M. Jan. 28, 20202).  Until the Eighth Circuit decides otherwise, I stand by my previous decisions that "claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings." *See, e.g.*, *Gilbert v. Saul*, No. C18-2045-LTS, 2019 WL 4751552, at *19-20 (N.D. Iowa Sept. 30, 2019).  I decline to issue a stay in this case pending the Eighth Circuit's decision in either set of consolidated cases.  This objection is overruled.

## V.     CONCLUSION

For the reasons set forth herein:

1.      Plaintiff's objections (Doc. No. 18) to the Report and Recommendation (Doc. No. 17) are **overruled**.

2.      I **accept** the Report and Recommendation **without modification**.  *See* 28 U.S.C. § 636(b)(1).

3.      Pursuant to Judge Roberts' recommendation:

  a.      The Commissioner's disability determination is **affirmed**; and

  b.      Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 30th day of March, 2020.

_____
Leonard T. Strand, Chief Judge